NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 221025-U

NO. 4-22-1025

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 8, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* SARA HULL, | ) ) ) | Appeal from the Circuit Court of Warren County |
| Petitioner-Appellant, | ) | No. 22FA8 |
| v. | ) | |
| MARIO ROBINSON, | ) | Honorable |
| Respondent-Appellee. | ) ) | James R. Standard, Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed and remanded, finding the circuit court erred in granting respondent's motion to dismiss.

¶ 2        In March 2022, the Illinois Department of Healthcare and Family Services (Department) filed a complaint for support against respondent, Mario Robinson, who in turn moved to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)). Following a hearing, the circuit court granted respondent's motion to dismiss and then later denied the Department's motion to reconsider.

¶ 3        On appeal, the Department argues the circuit court erred in granting respondent's motion to dismiss the complaint. We agree, and so we reverse and remand.

¶ 4                                I. BACKGROUND

¶ 5        In January 2015, Sara Hull gave birth to a child, A.R., at Genesis Medical Center in Davenport, Iowa. Hull and respondent completed a voluntary paternity affidavit (VPA) at the

hospital the next day. The notarized VPA named respondent as the child's father. Above respondent's signature, there read the following admonishment:

> "FATHER: I affirm that I understand that signing this paternity affidavit is voluntary and that I understand my rights, responsibilities, alternatives, and consequences. I further acknowledge that I am the biological father of the above named child and do hereby give my permission to enter my name as the legal father on the birth certificate. I affirm that the above is true and accurate."

The record indicates A.R.'s birth certificate names respondent as the father. In March 2015, the VPA was filed in the Iowa State Vital Records Office. Neither Hull nor the State of Iowa sought a child support order there. The parties eventually ended up in Illinois—A.R. living with Hull, and respondent living elsewhere with apparently little to no contact with Hull and A.R.

¶ 6 In March 2022, the Department initiated these proceedings by filing a complaint for support in circuit court. Citing the Iowa VPA, the complaint named respondent as "a responsible relative obligated for the financial and medical support of [A.R.]" The Department averred it had been providing child support for A.R. pursuant to state and federal law. Amongst other relief, the Department asked the court to enter an order requiring respondent to pay child support through income withholding to the State Disbursement Unit.

¶ 7 Respondent moved to dismiss the complaint pursuant to section 2-619(a)(9) of the Code, asserting the Department's complaint "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." Though it did not identify the affirmative matter negating the complaint, the motion claimed respondent signed the Iowa VPA "based upon the

misrepresentation of Sara Hull." Respondent's motion next referenced a notarized denial of paternity, dated April 4, 2017, signed by both respondent and Hull, wherein both affirmed respondent was not A.R.'s biological father. The motion finally referenced 2019 DNA testing indicating respondent was not A.R.'s biological father. Respondent attached the denial of paternity and the lab results to the motion to dismiss.

¶ 8   A month later, respondent also filed a two-count complaint to confirm nonpaternity against the Department. In the near identical claims, respondent acknowledged the Iowa VPA but alleged "Hull misrepresented the truth to [him] and told him he was the father of A.R." Like his motion to dismiss, respondent's complaint referenced the 2017 denial of paternity and the 2019 DNA results. The Department responded with a motion to strike and dismiss respondent's complaint to confirm nonpaternity.

¶ 9   In August 2022, the circuit court held a hearing on respondent's section 2-619 motion to dismiss. Respondent's counsel acknowledged the Iowa VPA but argued it created a presumption of paternity, which was rebutted by the 2017 denial of paternity and the 2019 DNA results. Counsel further argued respondent signed the VPA based on a fraudulent misrepresentation from Hull that he was A.R.'s father. Hull, not under oath, interjected she did not misrepresent anything to respondent. Back on track, respondent's counsel cited section 45/7(b)(5) of the Illinois Parentage Act of 1984 (750 ILCS 45/7(b)(5) (West 2014)), which outlined presumptions of paternity. Counsel went on to argue this statute allowed for vacating orders on paternity based on DNA testing. Citing the current statute—the Illinois Parentage Act of 2015 (750 ILCS 46/1 *et seq.* (West 2022))—the Department rebuffed opposing counsel's characterization of the VPA creating a presumption of paternity and noted "the Illinois statute, 750 ILCS 46-305, specifically says that a valid [VPA] is equivalent to an adjudication or an

order of parentage." Despite the current statute's language, the court opined, "Well, equivalent to is not the same things as being an adjudication." It rejected the VPA as a binding adjudication because it had not resulted from an adversarial proceeding before a tribunal. The court proceeded to diminish the Department's position by posing a pointed hypothetical:

> "[S]omebody might argue as fundamental fairness where it's—let's say irrefutable evidence is demonstrated that someone is not the father of the child and under the circumstances here, we'll assume for the sake of an example that it's established that someone misrepresented paternity, that is a mother, and that DNA testing shows that the gentleman involved is not the father and at that point an agency, an entity is insisting that nonetheless that person should be treated as though they are the father and their having executed an acknowledgment at some point dooms them."

When the Department tried to respond by saying it was relying solely on the Iowa VPA and there were certain statutory procedures for undoing a valid VPA, in either Illinois or Iowa, the court interrupted with, "Okay. I wasted [m]y breath." It carried on, stating, "And what I will assume at this point is that the concept of fundamental fairness has no place in the consideration of your agency in the handling of its cases so that—this would confirm that." Hull again interjected and asked to speak, which the court allowed. Again, not under oath, she stated respondent knew he was not A.R.'s father when he signed the Iowa VPA. She claimed she had tried to help respondent undo the VPA, but he never took action to rescind it.

¶ 10 Wading through the various motions and pleadings before it, the circuit court rendered its decision on the record. It denied the Department's motion to strike and dismiss

- 4 -

respondent's complaint to establish nonpaternity. It then turned its attention to determining whether respondent abandoned his section 2-619 motion to dismiss when he filed his complaint to establish nonpaternity. Without explicitly deciding the abandonment issue, and without explaining its reasoning, the court granted respondent's motion to dismiss. Respondent's counsel prepared an order, which the court signed and issued on the same day. The order contained four findings:

"1. The Respondent signed a voluntary paternity affidavit for the child A.R.L.R. (d/o/b 01/28/2015) on 01/29/2015 in the State of Iowa; and,

2. On April 4, 2017 the Petitioner signed a Denial of Paternity declaring that, '…[respondent] is not the biological father of A.R.L.R. and agree that his name can be deleted from the birth certificate.'

3. On November 12, 2019 DNA analysis confirmed that [respondent] was not the biological father of A.R.L.R.

4. On March 8, 2022 the [Department] filed a Complaint for Support in this matter seeking the financial contribution of respondent."

Though it did not contain a legal determination that an affirmative matter existed to defeat the Department's claim, the court's order granted respondent's section 2-619 motion to dismiss with prejudice.

¶ 11     The Department filed a timely motion to reconsider, arguing the "[circuit] court erred in its application of existing law." Specifically, the Department contended the court should

have given full faith and credit to the valid Iowa VPA and, therefore, should have treated the VPA as an adjudication of parentage pursuant to the Illinois statute. Finally, the Department argued the court erred "by ascribing any legal significance to genetic test results and legally insufficient 'Denial of Paternity,' both offered by Respondent as apparent affirmative defenses to the Complaint for Support." The court denied the motion following a hearing.

¶ 12        This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14        The Department argues the circuit court erred in granting respondent's motion to dismiss pursuant to section 2-619(a)(9) of the Code. We agree.

¶ 15                        A. Section 2-619(a)(9) Motions

¶ 16        "A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984. We have described an affirmative matter as "something in the nature of a defense which negates the cause of action completely." (Internal quotation marks omitted.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 33. The affirmative matter neutralizes the complaint's legal effect by asserting some other legal matter trumps it. An affirmative matter, therefore, is not an alternate version of the facts intended to contest or undermine the well-pleaded facts in the complaint. *Reynolds*, 2013 IL App (4th) 120139, ¶ 34 (citing *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121, 896 N.E.2d 232, 238 (2008)).

¶ 17        "Section 2-619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact—*relating to the affirmative matter*—early in the

litigation." (Emphasis in original.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 30. "When ruling on a section 2-619 motion to dismiss, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267, 938 N.E.2d 483, 488 (2010). Applying the same method on appeal, "[w]e review the dismissal of a claim pursuant to section 2-619(a)(9) *de novo*." *In re Estate of Lasley*, 2015 IL App (4th) 140690, ¶ 20, 44 N.E.3d 1117.

¶ 18                                 B. Voluntary Acknowledgments of Paternity

¶ 19          This case centers upon a signed acknowledgement of paternity, a state-approved form used to establish paternity. In Iowa, this document is called a voluntary paternity affidavit, while in Illinois we call it a voluntary acknowledgement of paternity. Since the document at issue here originated in Iowa, we elect to use the shorthand, VPA. In both Iowa and Illinois, a VPA legally establishes a parent-child relationship. Iowa Code § 252A.3A(1); 750 ILCS 46/301 (West 2022). A properly executed, signed, and filed VPA in either Iowa or Illinois has the full force and effect of a judicial determination of parentage and can serve as a basis for child support. Iowa Code § 252.3A(8)(b), (c) (West 2022); 750 ILCS 46/305(b) (West 2022). Under section 46/305(a) of the Illinois Parentage Act of 2015, a valid VPA filed with the Department "is equivalent to an adjudication of the parentage of a child and confers upon the acknowledged father all of the rights and duties of a parent." 750 ILCS 46/305(a) (West 2022). In either jurisdiction, a valid VPA can be undone in only one of two ways. It can be rescinded using a different state-approved recission form within 60 days of signing the VPA, or it can be challenged in a court proceeding, where it must be proved the father signed the VPA based upon

fraud, duress, or material mistake of fact. Iowa Code §§ 252A.3A(12); 600B.41A *et seq.* (West 2022); 750 ILCS 46/307 (West 2022).

¶ 20        The importance of DNA evidence in undoing a VPA varies depending on the jurisdiction. In Iowa, overcoming paternity established through a VPA requires genetic testing showing the established father is not the child's biological father *as well as* proving fraud, duress, or material mistake of fact. Iowa Code § 600B.41A(1), (3)(f)(2) (West 2022). Illinois law does not have a parallel requirement. In fact, our supreme court has held "a man who signs a voluntary acknowledgement of paternity can[not] later seek to undo the acknowledgement on the basis of DNA test results." *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 391, 818 N.E.2d 1204, 1205 (2004); see *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102, 1111, 890 N.E. 2d 944, 955 (2008) (stating a man who signed a voluntary acknowledgment of paternity cannot "avoid the conclusive presumption of paternity with contrary evidence, such as DNA results"). With these principles in tow, we turn to the case at hand.

¶ 21                                C. This Case

¶ 22        The Department grounded its complaint for support upon respondent being a "responsible relative obligated for the financial and medical support of [A.R.]" based on the valid, registered Iowa VPA. The complaint cited various legal authorities for the action, namely, the Illinois Public Aid Code (305 ILCS 5/10-1 *et seq.* (West 2022)), the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505 (West 2022)), the Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq.* (West 2022)), and Title IV-D of the Social Security Act (42 U.S.C. § 651 *et seq.* (2022)).

¶ 23        Respondent acknowledged the valid Iowa VPA, but asserted the Department's complaint for support should be dismissed under section 2-619(a)(9) of the Code for several

- 8 -

reasons, including: (1) respondent signed the Iowa VPA "based upon the misrepresentation of Sara Hull," (2) the 2017 notarized denial of paternity, and (3) the 2019 DNA results excluding respondent as A.R.'s biological father. Other than citing section 2-619(a)(9) of the Code, respondent's motion to dismiss did not cite any other legal authority for why these three points amount to affirmative matters that negate the complaint's cause of action for child support.

¶ 24 We, therefore, begin by observing respondent's motion did not properly allege affirmative matters under section 2-619(a)(9) of the Code. The crucial legal conclusion from the Department's complaint was that respondent can be held accountable for child support in an Illinois court because he signed a valid Iowa VPA, which established a legal parent-child relationship between respondent and A.R. See 750 ILCS 46/305(a), (b) (West 2022). An affirmative matter would either " 'negate[ ] [this] alleged cause of action completely or refute[ ] crucial conclusions of law.' " *Smith*, 231 Ill. 2d at 121 (quoting 4 R. Michael, Illinois Practice § 41.7 at 332 (1989)). The allegations in respondent's 2-619(a)(9) motion do neither. They are factual matters relevant to adjudicating the Department's complaint for support, not respondent's motion to dismiss.

¶ 25 The three points raised in respondent's motion to dismiss require the parties to present evidence and the factfinder to weigh the evidence, which is inapt for a proceeding under section 2-619(a)(9). See *Reynolds*, 2013 IL App (4th) 120139, ¶ 30 (explaining section 2-619(a) motions are appropriate for "disposing of issues of law and easily proved issues of fact—*relating to the affirmative matter*—early in the litigation" (emphasis in original)). For example, the allegation that respondent signed the Iowa VPA "based upon the misrepresentation of Sara Hull" is a fact issue—but one not easily proved on this record. There is nothing to support respondent's

- 9 -

misrepresentation claim, either in the motion or in the attachments, making it inappropriate for a section 2-619(a)(9) motion.

¶ 26        We pause briefly to provide the guidance apparently sought by the circuit court when, at one point, in a moment of apparent exasperation, the court said this case was destined for the appellate court and three judges smarter than him. While we cannot guarantee this court is the smarter tribunal, we can assure him there are three of us. Nevertheless, we see the court's statement as a request for guidance and think it prudent to oblige since this case will be remanded. Both Iowa and Illinois law allow for setting aside a voluntary acknowledgment of paternity by establishing fraud, duress, or material mistake of fact (Iowa Code § 600B.41A(3)(f)(2) (West 2022); 750 ILCS 46/309(a) (West 2022)), making it possible to allege one of those grounds as an affirmative matter in a section 2-619(a)(9) motion. Succeeding on such a motion, however, is improbable. Our supreme court has described the fraud, duress, or material mistake of fact necessary to challenge a VPA as "narrow grounds *** similar to the equitable grounds used by parties to a contract to rescind the contract and restore the parties to their initial status." *In re N.C.*, 2014 IL 116532, ¶ 54, 12 N.E.3d 23. This reasoning makes sense given a VPA is essentially a type of contract. We, therefore, understand *N.C.* to instruct the requisite fraud for undoing a VPA is similar to common law fraudulent misrepresentation. *N.C.*, 2014 IL 116532, ¶ 54 (citing *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 27, 975 N.E.2d 1189. To establish fraudulent-misrepresentation, a party must allege specific facts and then present evidence to a factfinder, who then determines if the evidence satisfies the claim's elements. *Freedberg*, 2012 IL App (1st) 110938, ¶ 36; *Board of Education of City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (1989) (naming fraudulent misrepresentation as a ground to rescind a contract and outlining its five common law

elements). This is doubly hard to do in this specific context, since "section 2-619(a)(9) does not authorize the [respondent] to submit affidavits or evidentiary matter for the purpose of contesting the plaintiff's factual allegations and presenting its version of the facts." *Reynolds*, 2013 IL App (4th) 120139, ¶ 34. Consequently, fraudulent misrepresentation is probably not easily proved as an affirmative matter in a section 2-619(a)(9) motion, as demonstrated by this case— respondent's motion to dismiss contained no specific facts and no evidence of misrepresentation.

¶ 27 Respondent's motion next referenced the 2017 notarized denial of paternity. This is a factual point without an attendant legal principle. Neither the written motion nor counsel's argument in the hearing explains how this document amounts to an affirmative matter that completely negates the Department's complaint—probably because it cannot and does not. Both Iowa and Illinois laws provide two ways to overcome a valid, registered VPA, and a notarized denial of paternity is not one of them. See Iowa Code §§ 252A.3A(12); 600B.41A *et seq.* (West 2022); 750 ILCS 46/307 (West 2022).

¶ 28 Respondent's motion to dismiss finally referenced the 2019 DNA results excluding respondent as A.R.'s biological father. In Illinois, however, a man cannot use DNA results to overcome a valid VPA. *Smith*, 212 Ill. 2d at 391. Coincidentally, the *Smith* court came to this conclusion when considering the very statute respondent's counsel cited during the hearing—section 45/7(b)(5) of the Illinois Parentage Act of 1984 (750 ILCS 750 45/7(b)(5) (West 2014)). Even if that statute still governed here, *Smith*'s holding remains the same—DNA cannot negate a VPA. It stands to reason, then, those results cannot be an affirmative matter that serves to defeat or bar the claim at this point in the litigation. Right now, the DNA evidence is a fact relating to the ultimate conclusion of whether the court grants the Department any relief; it does not relate to any affirmative matter. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 30 (stating

any facts in a 2-619(a)(9) motion must relate to the affirmative matter); 305 ILCS 5/10-10 (West 2022) (giving the circuit court some discretion in entering orders for support). By failing to allege ample affirmative matters to negate the Department's cause of action, respondent's motion was inadequate and should not have been granted.

¶ 29　　　The deficient motion makes the circuit court's decision understandable, but no less troubling. We observe the court's rationale for granting the motion to dismiss is not apparent from the record. The court's written order does not contain a legal conclusion. The report of proceedings likewise omits any legal determination from the court. Nowhere does the court identify the affirmative matters negating the Department's complaint. Instead, the written order relies upon factual findings, including the 2017 denial of paternity and the 2019 DNA results. But there is no legal analysis connecting these findings and the ultimate decision to grant the motion and dismiss the Department's complaint with prejudice.

¶ 30　　　We have several additional concerns arising from the proceedings. The record reveals the circuit court concerned itself with equity and fundamental fairness rather than the applicable statutes or case law. Equity and fundamental fairness are not affirmative matters allowing a court to dismiss a complaint under section 2-619 because they are fact-dependent principles requiring a court to exercise discretion. Equity and fundamental fairness are considerations appropriate when the court considers the complaint's merits. See 305 ILCS 5/10-10 (West 2022) ("The court *may* enter such orders for the payment of moneys for the support of the person as may be *just and equitable* \*\*\*." (Emphases added.)). What's more, the circuit court elevated these equitable principles over the governing statutes, notably rebuffing the Department's reliance upon section 46/305(a) of the Illinois Parentage Act of 2015, which provides that a valid VPA filed with the Department "is equivalent to an adjudication of the

parentage of a child and confers upon the acknowledged father all of the rights and duties of a parent." 750 ILCS 46/305(a) (West 2022). Rather than consider the statute's applicability, the court dismissed it, saying, "Well, equivalent to is not the same things as being an adjudication." By any definition of "equivalent," the court was wrong. Our final concern is the court's demeanor. The court's apparent antagonism and curt questioning of Hull and the Department create the unfortunate appearance the court predetermined the outcome. The tone and nature of the questions posed to Hull and the Department lead inexorably to the conclusion the court did not view the pleadings and supporting documents in the light most favorable to the Department, as it was required to do. *Hubble*, 238 Ill. 2d at 267.

¶ 31        These concerns notwithstanding, we conclude respondent presented no affirmative matter sufficient to bar or defeat the Department's complaint. Consequently, the circuit court erred in granting respondent's section 2-619(a)(9) motion to dismiss.

¶ 32        Unfair as this may be, it is how the Illinois legislature has chosen to address this particular situation. In Illinois, a man who voluntarily signed an Iowa VPA in January 2015 can be held accountable for child support for the very first time in 2023 in an Illinois court, even when the child's mother had six years earlier acknowledged the man is not the child's biological father in a notarized denial of paternity and DNA results confirmed that denial. In Illinois, even though it knows respondent is not A.R.'s biological father, the Department can pursue legal action for child support against respondent in circuit court and survive a section 2-619 motion to dismiss. Unfortunately for him, Illinois law provides him no remedy. It appears he may have options in Iowa, however, and he could elect to challenge the VPA there pursuant to Iowa Code section 600B.41A.

¶ 33                                III. CONCLUSION

- 13 -

¶ 34        For the reasons stated, we reverse the circuit court's judgment and remand with

directions.

¶ 35        Reversed and remanded.